**Affirmed and Opinion filed February 9, 2012**



In The

# Fourteenth Court of Appeals

---

### NO. 14-10-01167-CR

---

**MICHAEL PAUL BRADLEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause No. 1283152**

---

## OPINION

Appellant Michael Paul Bradley appeals the sufficiency of the evidence supporting his jury conviction for aggravated robbery, and he alleges ineffective assistance of counsel at his trial. We affirm.

# I

Bradley and his brother, Delleon, robbed complainant at gunpoint. Delleon approached complainant outside a carwash, pulled out a pistol and told him to drop everything. Complainant complied, and while his brother kept his pistol trained on complainant, Bradley picked up the items that had been dropped and searched complainant's pockets. Bradley then took complainant's keys and searched complainant's car. When he found a handgun in the car, Bradley returned and threatened complainant: "Oh, we got a gangster here . . . I ought to shoot you with your own gun." Complainant pleaded with Bradley and his brother as they ordered him to open his trunk. After it became clear that the trunk could not be opened, Bradley started the car and ordered complainant to drive off. The robbers then fled on foot.

During voir dire, the court discussed the presumption of innocence, burden of proof, and the fact that witnesses were not infallible. The State then reviewed some of those principles and discussed the law of parties. Defense counsel said he would not "needlessly go[] over what the [j]udge and the State went over," but he summarized the jury's duty to weigh witness credibility this way:

> The question for the jury would be[:] are you satisfied beyond a reasonable doubt of that victim's identification of the robber? I have given you some examples just then of something that might make some jurors, they might think it's probably the person but not beyond a reasonable doubt. I mean the person had been drinking, the victim had been drinking and doing drugs so bad she passed out, threw up, had to reschedule the lineup for the next day, didn't show up because she's not reliable. And that's some of our cases. You have to judge the person truly, the victim and or the alleged victim.

Throughout trial, Bradley's defense rested on a theory of mistaken identity. Bradley's brother, who pleaded guilty, testified that Bradley was not with him when the robbery was committed. Both brothers testified that a man named John Watson was actually with Bradley's brother when the crime was committed.

In its closing argument, the State stressed the varying credibility of the witnesses:

2

You didn't hear a single thing out of [complainant's] mouth that would lead you to think he's not a credible witness that he was not telling the truth. [Complainant] is absolutely a credible witness, he's a believable witness. His story was believable. He didn't get up there and try to overreact. He just told you what happened.

What else do you know about November the 29th, 2009? Delleon Bradley, he gets up here, he gets up here and does what? Tries to save his brother. Now, Delleon Bradley, he's a liar. They are both liars. I'm not going to hide that from you that that's my opinion of these guys, they are both liars and you heard them lie but what does Delleon Bradley know that he has to do when he gets up here and he's going to save his brother? He knows he's got to be truthful about some stuff. He knows he's got to be truthful that that robbery took place and he was the gunman and that a gun was stolen, a cell phone was stolen, a buck or two was stolen out of the guy's wallet and then that guy was told to leave and don't come back. Guess what? You know all that's true. The crook was up here telling you. What does that do? That corroborated every word you heard out of [complainant's] mouth, every single thing he said was exactly what [complainant] said and was he in here listening to [complainant] as he testified? No. So you know all of that is the absolute truth.

Now, what does he lie about? Two things, my brother wasn't there, it wasn't my brother. Who was that? That was John, John Watson was I believe exactly how he said it on the witness stand. Sometimes people forget names. I know we all got a lesson on that but this is a person he knows who's his friend that he was going to come in here and say was going to commit this robbery. I asked him, ["]What do you know about John Watson?["] I think we got this as far as what he could tell you about John Watson. Absolutely nothing. He's lying.

The jury returned a guilty verdict and, after Bradley pleaded "true" to an enhancement paragraph, the jury sentenced him to forty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

II

A

A majority of judges on the Court of Criminal Appeals has concluded that the *Jackson v. Virginia*[1] legal-sufficiency standard is the only standard a court reviewing a criminal case should apply in determining whether the evidence is sufficient to support each element that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) (plurality op.) (Hervey, J., joined by Keller, P.J., Keasler, and Cochran, J.J.); *id.* at 926 (Cochran, J., concurring, joined by Womack, J.) (agreeing with the plurality conclusion). Accordingly, we ask only if the evidence is legally sufficient to sustain a verdict of guilty beyond a reasonable doubt. *See id.* at 912 (plurality op.); *see also Orsag v. State*, 312 S.W.3d 105, 115 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

In a legal-sufficiency case, we examine all the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard of review applies to cases involving both direct and circumstantial evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Although we consider everything presented at trial, we do not substitute our judgment regarding the weight and credibility of the evidence for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We presume the jury resolved conflicting inferences in favor of the verdict, and defer to that determination. *Clayton*, 235 S.W.3d at 778. We also determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id.*

To obtain a conviction for aggravated robbery, the State must prove, beyond a reasonable doubt, that the accused (1) unlawfully appropriated property with the intent to

---

[1] 443 U.S. 307 (1979).

deprive it from its owner,[2] (2) intentionally or knowingly threatened or placed another in fear of imminent bodily injury or death,[3] and (3) uses or exhibits a deadly weapon.[4] The State must prove beyond a reasonable doubt that the defendant is the person who committed the charged offense. *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984). An individual can be charged as a party to an offense and can be held criminally responsible for the conduct of another when that individual acts in concert with another person in committing the offense. Tex. Penal Code Ann. §§ 7.01–7.02. Circumstantial evidence alone can be sufficient to establish guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

B

An accused is entitled to reasonably effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *King v. State,* 649 S.W.2d 42, 44 (Tex. Crim. App. 1983). In reviewing claims of ineffective assistance of counsel, we apply a two-prong test. *See Thompson v. State,* 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). To establish ineffective assistance, an appellant must prove by a preponderance of the evidence that (1) his trial counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. *Strickland,* 466 U.S. at 687; *Mallett v. State,* 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001). If a criminal defendant can prove that trial counsel's performance was deficient, he must still affirmatively prove that counsel's actions prejudiced him. *Thompson,* 9 S.W.3d at 812. To demonstrate prejudice, a defendant must establish a reasonable probability that the result of the proceeding would have been different if trial counsel had acted professionally. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Mallett,* 65 S.W.3d at 63.

---

[2] Tex. Penal Code § 31.03(a) (Theft).

[3] Tex. Penal Code § 29.02(a)(2) (Robbery).

[4] Tex. Penal Code § 29.03 (a)(2) (Aggravated Robbery).

5

When evaluating a claim of ineffective assistance, the appellate court looks to the totality of the representation and the particular circumstances of each case. *Thompson,* 9 S.W.3d at 813. In making such an evaluation, any judicial review must be highly deferential to trial counsel and avoid the distorting effects of hindsight. *Ingham v. State,* 679 S.W.2d 503, 509 (Tex. Crim. App. 1984) (citing *Strickland,* 466 U.S. at 689). Accordingly, there is a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas v. State,* 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). The appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Thompson,* 9 S.W.3d at 813 (citing *Cannon v. State,* 668 S.W.2d 401, 403 (Tex. Crim. App. 1984)). To overcome the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* at 814. Direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped. *Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). But, when no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as he did. *Andrews v. State,* 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

### III

### A

Bradley attacks the sufficiency of the evidence by relying, almost exclusively, on his brother's testimony, with an emphasis on his claim that John Watson—not Bradley—was the other participant in the robbery. It was the jury's role to decide whether that testimony was credible, and we will not disturb the jury's decision.

The testimony of a single eyewitness can be enough to support a conviction. *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971). The jury alone decides whether to believe eyewitness testimony, and the jury alone resolves any conflicts or

inconsistencies in the evidence. *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998); *Orsag*, 312 S.W.3d at 115. Likewise, the jury alone weighs the evidence, and it may find guilt without physical evidence linking the accused to the crime. *Harmon v. State*, 167 S.W.3d 610, 614 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

Complainant testified that Bradley took items from his person and his car and threatened to shoot him with his own gun. On these facts alone, a rational jury could find that Bradley had (1) unlawfully appropriated property with the intent to deprive it from its owner,[5] (2) intentionally or knowingly threatened or placed another in fear of imminent bodily injury or death,[6] and (3) used or exhibited a deadly weapon.[7] *See Mosley*, 983 S.W.2d at 254. We presume the jury did so find, and we defer to that determination. *See Clayton*, 235 S.W.3d at 778–79.

Bradley also notes that, in his initial description of the suspects to the police, complainant (1) did not inform them he recognized Delleon as the brother of a former classmate and (2) gave no description of Delleon's tattoos or the sores Bradley had at the time. Although identification was certainly an issue at trial, we dismiss the notion that the general description complainant initially gave to police somehow undercuts his in-court identification of Bradley and his identification of both Bradley and his brother in separate photo arrays prepared by the police. An imperfect description does not change the fact that complainant positively identified the brothers both when he saw them in person and in photographs.

Admittedly, however, the way in which the photo arrays were put together place this case on the frontier of a largely unexplored legal wilderness: the role of social media in criminal prosecutions. Sometime after the robbery in this case, complainant saw the two men who had robbed him, and he asked someone with them for their names. He looked up the brothers' Facebook pages. There he found, among other things, a picture

---

[5] Tex. Penal Code § 31.03(a) (Theft).

[6] Tex. Penal Code § 29.02(a)(2) (Robbery).

[7] Tex. Penal Code § 29.03 (a)(2) (Aggravated Robbery).

7

of Bradley posing with two guns—including one that looked remarkably similar to the gun stolen from complainant during the robbery. Complainant emailed these photos to the investigating detective and later identified both brothers in separate photo arrays.

The reliability of eyewitness testimony has long been an area of concern. *United States v. Wade*, 388 U.S. 218, 228 (1967) ("The identification of strangers is proverbially untrustworthy."); *Brown v. State*, 689 S.W.2d 219, 221 (Tex. Crim. App. 1985) (Teague, J., dissenting from en banc denial of petition) (stating it was "an established scientific fact that eyewitness identification testimony may be unreliable"). Vast online photo databases—like Facebook—and relatively easy access to them will undoubtedly play an ever-increasing role in identifying and prosecuting suspects.

In his closing argument, defense counsel addressed the Facebook photos in this case: "It was a proper[,] professionally well[-]done photo array, but the bottom line is [the investigating detective] was just recirculating pictures of the two people [complainant] had sent to him. That's just bolstering support—I mean, these are two pictures of the guys [complainant believes] did it. They take the same two guys and put them in photo spreads, and lo and behold, [complainant] identifies the same two guys. Well, that doesn't tell us anything. . . ."

Nevertheless, the method by which the police compiled the arrays ultimately makes no difference in this case. Even if we assume, without deciding, the arrays were impermissibly suggestive, the in-court testimony is still admissible "as long as the record clearly reveals that the witness'[s] prior observation of the accused was sufficient to serve as an independent origin for the in-court identification." *Jackson v. State*, 657 S.W.2d 123, 130 (Tex. Crim. App. 1983). When it is established that the witness had an independent basis for identification, the in-court identification will not be reversible error without substantial evidence that the identification was influenced by seeing the defendant at defense counsel's table. *See Shaw v. State*, 846 S.W.2d 482, 485 (Tex. App.—Houston [14th Dist.] 1993, pet ref'd).

After the robbery in this case, complainant saw Bradley on two separate occasions—once with Delleon in a nightclub owned by complainant—in the area where the robbery took place. He also recognized Delleon as the brother of one of his schoolmates. This is sufficient evidence of an independent basis for identification. *See Jackson*, 657 S.W.2d at 130 (finding an independent basis when two witnesses viewed the suspect for about an hour and engaged him in conversation).

B

Bradley argues his trial counsel was ineffective because (1) he did not discuss eyewitness identification or the law of parties during voir dire and (2) he did not object when, during closing argument, the prosecutor called Bradley and his brother liars. Both arguments are without merit. Defense counsel adequately addressed the fallibility of eyewitness identifications when he summarized the jury's duty to be "satisfied beyond a reasonable doubt of that victim's identification of the robber." The concept of the law of parties is irrelevant where, as here, a rational jury could have found the defendant himself committed the crime in question. So, even though Bradley's trial counsel did not discuss the law of parties, no harm has been done to Bradley as a result. Without a showing of prejudice, we cannot find ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687; *Mallett*, 65 S.W.3d at 62–63.

Likewise, Bradley's counsel's failure to object during closing is not ineffective assistance either. The State's characterization of Bradley and his brother as "liars" was a perfectly valid argument that the two were not worthy of belief. *See Gaffney v. State*, 937 S.W.2d 540, 543 (Tex. App.—Texarkana 1996, pet. ref'd). When the defendant takes the stand, his credibility is in question, and the prosecution has the right to attack his testimony in the same manner as testimony from any other witness, so long as the opinions of counsel are based upon the facts and inferences provided by the evidence. *Id.* The conflict between complainant's testimony and the testimony of Bradley and his brother is enough to sustain the inference that the brothers were lying. Counsel is not

9

ineffective for failing to raise an objection that lacks merit. *See Cooper v. State*, 707 S.W.2d 686, 689 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd).

\* \* \*

For the foregoing reasons, we affirm.


/s/     Jeffrey V. Brown
           Justice


Panel consists of Justices Brown, Boyce, and McCally.

Publish — TEX. R. APP. P. 47.2(b).