**Opinion issued November 14, 2013**



**In The**

# Court of Appeals

**For The**

# First District of Texas

---

**NO. 01-12-00593-CR**

---

**BRANDON ROBINSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1275371**

---

**MEMORANDUM OPINION**

A jury found appellant, Brandon Robinson, guilty of the offense of aggravated robbery.[1] After appellant pleaded "true" to the allegation that he had a prior conviction, the trial court assessed his punishment at confinement for eighteen

---

1    *See* TEX. PENAL CODE ANN. § 29.03 (Vernon 2011).

years and found that he used or exhibited a deadly weapon, namely, a firearm, in the commission of the offense. In his sole issue, appellant contends that the trial court erred in instructing the jury on the law of accomplice witnesses.

We affirm.

## Background

The complainant, Vincent Victor, testified that around 9:00 p.m. on August 23, 2010, he was working in his truck, which was parked in the driveway of his home in the North Shore community of Houston. Appellant tapped on the driver's-side window, opened the door, and stuck a black, semiautomatic "gun" in the complainant's "ribs." The complainant told appellant that he did not have any money, but he offered the keys to his other car, which appellant refused. Instead, appellant demanded access to the complainant's house, saying he wanted to "get that big screen T.V. and that safe you got." The complainant refused because his family was inside the house, and a struggle ensued.

A second man, wearing a black t-shirt and later identified as Deantre Williams, appeared from behind appellant and said, "I'll take that shit." And he "yanked" the complainant's gold chain from his neck. Williams, who did not appear to be carrying a weapon, began rummaging through the complainant's truck.

Appellant hit the complainant's eye with the barrel of the firearm and again demanded access to the house. After the complainant refused and said, "If you are

2

going to do something, you are going to do it here," appellant pointed the firearm at the complainant and pulled the trigger, but it did not fire. Appellant "tried cocking" and "pull[ing] it" again, but the gun still did not fire. Appellant kept trying to "hit" and "pull it," but apparently realizing that the firearm was jammed, "took out running" with Williams.

Moments later, the complainant, who was still in his driveway, saw a white SUV approaching, and he called out to it. The SUV stopped, and the complainant saw the driver, later identified by his last name, Cooper, wearing "army-fatigue-like-overalls," and a passenger, later identified as Eugene Rivon, sitting behind the driver and wearing a white t-shirt. After the complainant exclaimed, "They just tried jacking me!" and asked the men to call for emergency assistance, Rivon "looked at" the complainant "like 'ha, ha, ha, yeah, all right,'" and the men drove away. The complainant then realized that the men in the SUV were with the men who had robbed him.

The complainant then got into his truck and followed the SUV, and it became clear that the driver was not familiar with the neighborhood. The complainant then saw Williams walking across a field near a church and when Williams saw him, he "took off running." The complainant also saw appellant, who also "took out running" when he saw the complainant.

The complainant drove his truck in a circle by the church and then saw Harris County Sheriff's Office ("HCSO") Deputy Ellington at a traffic light. The complainant rolled down his window and waved to Ellington, who followed him into a Starbucks coffee shop parking lot. After the complainant got out of his truck and said, "I just got robbed," several customers, who were outside, saw the white SUV, pointed to it and yelled, "There they go over there!" The SUV was parked at the end of the parking lot, approximately 300 feet away. The complainant told Ellington that he was "positive" that all four men were inside, and Ellington left to pursue the SUV, followed by the complainant.

The complainant further testified that when he caught up with Deputy Ellington,[2] he saw that he had stopped the SUV in front of a Walgreens store. It was apparent that Ellington was chasing two of the men on foot because Ellington was gone and two of the passenger-side doors of the SUV were open. After the complainant saw Cooper, still in the driver's seat, with Williams sitting behind Cooper, and exchanged words with them, Cooper drove away. And the complainant waited at the Walgreens for Ellington.

The complainant described appellant to Deputy Ellington as a black man, 5'10" tall, wearing a black shirt, and with a "gold grill in front of his teeth." A short time later, a police officer came back to the Walgreens with appellant in the back

---

2    Deputy Ellington did not testify.

4

seat of the patrol car, opened the back door, and asked, "That's him?" The complainant said, "Yes. Tell him to smile." Appellant then smiled, revealing the "gold grill" in front of his teeth that the complainant had noticed. And the complainant said, "Yeah, that's him." The complainant noted that he was able to get a good look at appellant during the robbery and he was "100 percent sure" that appellant was the person who had hit him with the gun. From the time of the robbery to the time of the identification, "maybe 15 minutes" had passed.

HCSO Deputy Elizondo testified that he arrested appellant near the complainant's home in a driveway between a Pizza Hut restaurant and some retail shops. And appellant's appearance matched the description given to Deputy Ellington by the complainant, although he did not have a weapon at the time. When arrested, appellant was "breathing heavily," like he was out of breath. When Elizondo brought appellant back to the Walgreens parking lot, the complainant identified him "right away." And, later, while at a police station, appellant, who was the only suspect with a "gold grill," attempted to throw it away.

Rivon testified that although the State had charged him as a codefendant in the robbery, it, in exchange for his testimony against appellant, dismissed the case against him. Rivon explained that, before the robbery, Cooper had offered to give him a ride to North Shore, where Rivon's mother and girlfriend live. So, Rivon got into Cooper's white SUV with appellant and Williams. When they arrived in the

5

vicinity of North Shore, Cooper dropped off appellant and Williams near a Wal-Mart store. Cooper, with Rivon, then drove into North Shore, where, according to Rivon, Cooper took a wrong turn and drove past the complainant's house. They first saw the complainant near the back of his truck, and he then jumped in front of Cooper's SUV, "hollering 'help, help." Rivon stated that because he and Cooper were afraid, they drove away. They then saw Williams and picked him up. Shorty thereafter, they saw the complainant talking to a police officer, and he pointed at them. Rivon explained that when they got to the Walgreen's parking lot, he fled the SUV on foot because he had a warrant out for his arrest. Rivon noted that he did not see where appellant had gone after he was dropped off at the Wal-Mart store, and he did not see the robbery.

## Standard of Review

A trial court must instruct a jury by "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007); *see McIntosh v. State*, 297 S.W.3d 536, 542 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). In analyzing a jury charge issue, our first duty is to determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If we find error, we then analyze the error for harm. *Id.* The degree of harm necessary for reversal depends on whether the defendant preserved the error by objection. *Id.* Reversal is required for a jury charge error when the defendant has

6

properly objected to the charge and we find "some harm" to his rights. *Id.* (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)). When the defendant fails to object, or states that he has no objection to a charge, we will not reverse for charge error unless the record shows "egregious harm" to the defendant. *Id.* at 743–44. Thus, we review alleged charge error by considering whether (1) error exists in the charge and (2) if so, whether sufficient harm resulted from the error to require reversal. *Id.* at 744.

## Jury Charge

In his sole issue, appellant argues that the trial court erred in instructing the jury that Rivon was an "accomplice as a matter of fact" because Rivon was an "accomplice as a matter of law," having agreed to testify in exchange for the State dismissing its case against him. Appellant further argues that he was harmed by the trial court's error because the non-accomplice evidence is insufficient to connect him to the offense.

At trial, appellant requested that the jury be instructed that Rivon was an accomplice as a matter of law as follows:

> The witness Paul Rivon is an accomplice if an offense is committed. And you cannot convict the defendant on his testimony unless you further believe that there is other evidence in the case outside the testimony of Paul Rivon intending [sic] to connect the defendant with the offense committed if you find that such an offense was committed. And the corroboration is not sufficient if it merely shows the commission of the offense.

7

But, it must tend to connect the defendant with this commission and then for all of the evidence, you must believe beyond a reasonable doubt that the defendant is guilty of the offense charged against him.

The trial court refused appellant's proffered charge. And it instead instructed the jury to consider whether Rivon was an accomplice as a matter of fact as follows:

If you find the witness, Paul Rivon, is an accomplice, if an offense was committed, then you cannot convict the defendant upon his testimony unless you further believe that there is other evidence in this case, outside the testimony of Paul Rivon tending to connect the defendant with the offense committed, if you find that an offense was committed, and the corroboration is not sufficient if it merely shows the commission of the offense, but it must tend to connect the defendant with its commission, and then from all the evidence you must believe beyond a reasonable doubt that the defendant is guilty of the offense charged against him.

Appellant objected, arguing that Rivon was an accomplice as a matter of law because he had been charged as a codefendant in the robbery. The trial court overruled appellant's objection.

An accomplice is a person who participates before, during, or after the commission of an offense, with the requisite culpable mental state. *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011). Presence at a crime scene alone does not make a person an accomplice; rather, an accomplice must have engaged in an affirmative act that promotes the commission of the offense that the accused committed. *Id.* A witness may be considered an accomplice as a matter of fact or as a matter of law. *Id.* If the evidence is conflicting as to whether a witness is an accomplice, then the trial court may instruct the jury to determine the witness's

8

status as a fact issue. *Id*. at 439–40. When the evidence clearly shows that a witness is an accomplice as a matter of law, however, the court must instruct the jury accordingly. *Id.* at 439.

"A witness who is indicted for the same offense or a lesser-included offense as the accused is an accomplice as a matter of law." *Id.* If the State dismisses the indictment before the witness testifies, the witness is no longer deemed to be an accomplice as a matter of law. *Id.* "A witness continues to be regarded as an accomplice, however, if the witness agrees to testify against the accused in exchange for the dismissal of the charge." *Id.*

Here, Rivon testified at trial that he had initially been indicted as appellant's codefendant in the robbery and the State had dismissed the indictment against him earlier that day in exchange for his testimony. *See id.* And Rivon would not have testified in the absence of the agreement. In its brief on appeal, the State concedes that Rivon "remained an accomplice as a matter of law" because the charges against him were dismissed as part of an agreed exchange. *See id.* Because Rivon was an accomplice as a matter of law, the trial court erred in not instructing the jury accordingly. *See id.* Having determined that error exists, we next consider whether appellant suffered sufficient harm to warrant reversal. *See Ngo*, 175 S.W.3d at 743–44.

The record indicates that appellant timely objected to the trial court's jury instruction. Thus, we consider whether the error resulted in "some harm." *See Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002) (citing *Almanza*, 686 S.W.2d at 171). In applying the "some harm" standard, the reliability inquiry may be satisfied if: (1) the record contains sufficient non-accomplice evidence and (2) no rational basis exists for disregarding such evidence. *Id.*

In reviewing the sufficiency of the corroborating evidence, we exclude the accomplice testimony from our consideration and determine whether there is any independent evidence that tends to connect the defendant with the commission of the offense. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). We view the corroborating evidence in the light most favorable to the jury's verdict. *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008). If there are two views of the evidence, one tending to connect the accused to the offense and the other not, we defer to the jury's view. *Smith*, 332 S.W.3d at 442. "[I]t is not appropriate for appellate courts to independently construe the non-accomplice evidence." *Id.*

It is not necessary that corroborating evidence directly connect a defendant to an offense or be sufficient by itself to establish guilt. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). The corroborating evidence may be direct or circumstantial. *Smith*, 332 S.W.3d at 442. The evidence must simply link the accused in some way to the commission of the offense and show that rational jurors

10

could conclude that the evidence sufficiently tended to connect the accused to the offense. *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009).

Here, appellant argues that, apart from Rivon's testimony, the evidence is insufficient to link him to the commission of the offense because, during the robbery, the lighting in the neighborhood was insufficient and "the only description [the complainant] could come up with was that the gunman was black, wearing black, and had a gold grill, a description that likely fit more than one young black male in the neighborhood that night." Appellant asserts that "given the unreliability of eyewitness identification generally, and show up identification in particular, it certainly cannot be said that [appellant] was not harmed by the error."

Eliminating the accomplice testimony from consideration, the remaining evidence is sufficient to tend to connect appellant to the aggravated robbery. *See Malone*, 253 S.W.3d at 257. The complainant testified that he had a good look at appellant during the robbery and was able to describe him as a black man, 5'10" tall, wearing a black shirt, and with a "gold grill in front of his teeth." And the complainant emphasized that he was "100 percent sure" that appellant was the person who had held him at gunpoint. And, from the time of the robbery to the time of the identification, "maybe 15 minutes" had passed. Further, the complainant noted that after the firearm had failed to fire, appellant ran away on foot. Appellant also ran when he later saw the complainant driving by him. The complainant also

11

identified appellant in the courtroom at trial as the man who had held him at gunpoint. The testimony of a single eyewitness can be sufficient to support a conviction. *See Bradley v. State*, 359 S.W.3d 912, 917 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (concluding that complainant's testimony that defendant threatened to shoot him was sufficient, on its own, for rational jury to conclude that offense was committed). "The jury alone decides whether to believe eyewitness testimony, and the jury alone resolves any conflicts or inconsistencies in the evidence." *Id.* (citing *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998)).

Deputy Elizondo testified that, minutes after the robbery, he arrested appellant near the complainant's home in a driveway between a Pizza Hut restaurant and some retail shops. Appellant's appearance matched the description the complainant gave to Deputy Ellington, and, when arrested, appellant was "breathing heavily," like he was out of breath. Elizondo also testified that the complainant identified appellant "right away." And, while at the police station, appellant, who was the only suspect with a "gold grill," attempted to throw it away. "[P]roof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." *See Smith*, 332 S.W.3d at 443.

The jury could have reasonably concluded that this evidence sufficiently tended to connect appellant to the commission of the offense. *See Simmons*, 282 S.W.3d at 508. Nothing in the record suggests that the complainant's testimony or that of Deputy Elizondo was unreliable. Thus, there is no rational basis to disregard this evidence. *See Herron*, 86 S.W.3d at 632.

Although the record shows that appellant was not found in possession of a firearm, the jury alone weighs the evidence and may find guilt without physical evidence linking the accused to the offense. *See Harmon v. State*, 167 S.W.3d 610, 614 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (concluding that rational jury could have found defendant guilty of aggravated robbery without firearm in evidence).

We conclude that the combined weight of the non-accomplice evidence, viewed in the light most favorable to the jury's verdict, sufficiently tends to connect appellant to the offense. Because the record contains sufficient non-accomplice evidence and no rational basis exists for disregarding that evidence, we hold that the trial court's error in not instructing the jury that Rivon was an accomplice as a matter of law was harmless.

Accordingly, we overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

Do not publish.    TEX. R. APP. P. 47.2(b).