**Affirmed and Opinion Filed July 11, 2024**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-23-00026-CR**

**DONNY RAY GETER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 282nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F21-75021-S**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Carlyle
Opinion by Justice Partida-Kipness

Appellant Donny Geter appeals his conviction for the murder of Joseph Lee Eric Kemp. In a single issue, Geter complains the trial court abused its discretion by allowing testimony from a police detective concerning a witness's identification of Geter in a photo lineup. We affirm the judgment.

## BACKGROUND

On the evening of January 5, 2021, Lena Warren drove Danish Shaw and Joseph Lee Eric Kemp to a house on Corrigan Court in Dallas where their friend, Jermaine Germany, "stayed." Warren wanted to visit Germany but did not call him

before driving to the house. When they arrived at the house on Corrigan Court, Warren walked to the front door and knocked while Kemp and Shaw stayed in the vehicle. Cecilia Allen answered the door. She and Geter[1] were in the living room drinking alcoholic beverages, but Germany was not present. Warren came inside, stayed for less than five minutes, and then went back outside. She knew Allen as CeCe and described her as a friend she had not seen in a while. At trial, Warren testified the person in the house with Allen was "the other boy we here for" and she had seen that person twice in the past.

According to Allen, she and Geter walked outside with Warren. She saw Warren's vehicle parked outside. Allen also observed two people in Warren's car: a man in the back seat and a woman in the front passenger seat. At trial, Warren and Shaw confirmed Kemp was the man in the back seat and Shaw was the woman in the front passenger seat. Allen testified Warren went back to the vehicle, sat down in the driver's seat with the door open and her leg out of the vehicle, and was "just chillin," while Allen and Geter stood outside of the vehicle.

An argument then ensued between Warren and Kemp. According to Allen, Warren told Kemp to get out of her vehicle, called him a "leech," and threatened to leave him behind. Kemp snatched the keys from the ignition of Warren's car, left the vehicle, and walked quickly down the street. Allen testified Warren told Geter

---

[1] Allen and Geter are cousins. Allen was a reluctant witness at trial. She told the jury she did not want to testify and had appeared only because the State served her with a subpoena.

to "go get her keys," and Geter ran after Kemp. Warren denied telling Geter to retrieve her keys. She and Shaw told the jury Geter ran out of the house and chased Kemp when he saw Kemp running and heard Warren yelling. Allen, Warren, and Shaw all agreed, however, that they next heard gunshots.

Allen heard a gunshot, saw Kemp fall, and saw Geter had a gun. When Kemp fell, Allen guessed he was crawling and then she saw Geter "run down some more," and then she heard another shot. Warren gave a similar account:

> Uh, I was yelling for him to bring my keys. He -- he was still running. And then somebody – and someone came out the house and it was -- I heard gunshots. But I -- uh, he was still running, and then he was in the grass, so I thought maybe he just fell in the grass.

She confirmed the man running after Kemp was the man who was in the house with Allen. She heard "maybe three" gunshots, but she did not see a gun.

Shaw was inside the vehicle when she heard four gunshots. She said the man who came running out of the house was the one shooting. When neither Kemp nor Geter came back to the vehicle, she and Warren walked to where Kemp was shot and found him bleeding on the ground. Shaw eventually called 911.

Allen said she wanted to help Kemp but did not help him because she was "in panic mode" and was scared she would be blamed. Instead, she left with Geter in his vehicle. When Allen asked Geter if he shot the man, Geter said "yeah." After leaving the scene, she and Geter drove to an apartment in Cedar Hill to see Germany. At the apartment, she heard Geter tell Germany that he needed Germany "to put up the

gun." She interpreted this as Geter asking Germany to hide the gun or do something with it. Geter gave Germany the gun, and she and Geter left.

When Detective Jake Morgan of the Dallas Police Department's homicide division arrived on scene, he learned two witnesses were detained and in separate patrol vehicles. Those witnesses were Warren and Shaw. Detective Morgan had Warren and Shaw transported back to Dallas Police Headquarters for questioning. During Detective Morgan's interview of Warren, she told him that she had driven with the victim and Shaw to the house on Corrigan Court to see Germany, who was a friend who lived there. Warren also told Detective Morgan that when she went into the house, she realized Germany was not there. But a woman she knew as CeCe and another man were in Germany's house. Warren told Detective Morgan that the victim, Kemp, was upset because he wanted to leave. Kemp grabbed the keys to Warren's vehicle and ran down the street. The man who Warren saw in Germany's house with Allen followed Kemp and shot him multiple times. Warren gave Detective Morgan Germany's name and phone number. Warren also provided a general description of the shooter. Shaw confirmed she was the person who called 911 but provided no other helpful information to Detective Morgan.

Detective Morgan called the phone number given to him by Warren that evening, and no one answered. But Germany returned the phone call the following day. Germany confirmed the house on Corrigan Court was his place but he was not present during the offense. Detective Morgan testified that Germany also said, "the

person that was there was a person named Donny Geter." Germany provided Detective Morgan with what he believed to be Geter's Facebook page. After looking at the Facebook page, Detective Morgan determined the photos he saw of Geter were "similar" to some of the descriptions of the shooter provided by Warren and decided to create a six-photo lineup. He had another officer administer the six-photo lineup to Warren. Per Department protocol, that officer was "trained in distributing six-photo line-ups," had "nothing to do with the case," and did not know which photo was a photo of the suspect.

The photo lineup was administered to Warren the day after the shooting. Detective Morgan watched the other detective conduct the lineup from another room through an audio/video feed. He testified that Warren identified Geter's photo as the person who committed the crime. Warren also signed the back of the photo she chose as the shooter. The video of the process was not available to the State or the defense and was not shown to the jury because the file became corrupted and could not be saved to disk.

Following the identification, Detective Morgan obtained an arrest warrant and search warrant for a mobile home connected to Geter. On February 4, 2021, Geter was arrested. The State indicted Geter and, on October 27, 2022, a jury convicted him of murder and sentenced him to 50 years' imprisonment. This appeal followed.

## STANDARD OF REVIEW

The admission or exclusion of evidence is reviewed for abuse of discretion. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018); *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). "Under this standard, the trial court's decision to admit or exclude evidence will be upheld as long as it was within the 'zone of reasonable disagreement.' " *Beham*, 559 S.W.3d at 478.

## ANALYSIS

In his sole issue, Geter contends the trial court abused its discretion by admitting Detective Morgan's testimony regarding Warren's identification of Geter as the shooter in the photo lineup. He maintains Detective Morgan was not a proper witness to testify to the identification because he did not administer the photo lineup and his testimony bolstered Warren's testimony. The State argues Geter failed to preserve error because his "improper predicate" objection was too general. We will address the waiver issue first.

## I.     Waiver

"To properly preserve an issue concerning the admission of evidence for appeal, a party's objection must inform the trial court why or on what basis the otherwise admissible evidence should be excluded." *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009); *see also* TEX. R. APP. P. 33.1(a)(1)(A) (a complaint is not preserved for appeal unless it was "made to the trial court by a timely request, objection, or motion. . ."). Here, when the State questioned Detective Morgan about

Warren's identification of Geter in the photo lineup, Geter's counsel objected "to improper predicate." When the prosecutor stated he was "confused as to the objection," the following discussion occurred:

> DEFENSE COUNSEL: Judge, this was not the person who administered the lineup, so they shouldn't be kind of a backdoor through this detective person.
>
> THE COURT: Were you present?
>
> THE WITNESS: I - - watched it on video. I was not present in the room on audio and video. I'm not allowed to be in the room when it's administered.
>
> THE COURT: It was happening, but you were
>
> THE WITNESS: I was - - I was present in my office watching it on audio and video
>
> THE COURT: Okay. Overruled.

The State relies on two cases to support its argument that Geter's objection was insufficient to preserve error. *See Smith v. State*, 683 S.W.2d 393 (Tex. Crim. App. 1984); *see also Bird v.* State, 692 S.W.2d 65 (Tex. Crim. App. 1985). In both cases, the court concluded lodging an objection of insufficient or improper predicate was too general to preserve error. *Smith*, 683 S.W.3d at 403–04 (objection that evidence is inadmissible "unless he lays a predicate" did not preserve error); *Bird*, 692 S.W.2d at 70 (objection on the grounds that the proper predicate had not been laid without informing the court of the specific deficiency was insufficient to preserve error). These opinions are distinguishable from the case at bar because Geter's counsel

provided further explanation of what counsel meant by the "improper predicate" objection. Counsel, thus, provided an explanation of the specific deficiency.

We conclude defense counsel's statement that Detective Morgan did not administer the lineup was sufficient to inform the trial court on what basis counsel contended the evidence should be excluded. The trial court overruled that objection. Geter's complaint about the ruling was, therefore, preserved for appeal.

## II.    Admission of Detective Morgan's Testimony

Having concluded Geter preserved error, we now address his sole appellate issue; whether the trial court abused its discretion by admitting Detective Morgan's testimony that Warren identified Geter in the photo lineup. Geter objected to the testimony because Detective Morgan was not the officer who administered the lineup to Warren. On appeal, however, Geter cites only *Davis v. State*, 636 S.W.2d 197 (Tex. Crim. App. 1982) to support his argument that admission of the testimony was erroneous. The *Davis* case addressed whether the admission of testimony constituted improper bolstering. *Id.* at 197. Geter did not raise an objection based on improper bolstering or hearsay below. Therefore, to the extent he is urging either objection on appeal, that objection was not preserved for our review, and we do not address it here. *See Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial.").

As for the objection Geter preserved for review, Geter cites no authority, and we have found none, to support his contention that a detective who observed the administration of a photo lineup cannot testify to who the witness identified as the person who committed the offense. On the contrary, Texas courts routinely uphold the admission of such testimony from law enforcement officers under the hearsay exception found in Rule 801(e)(1)(C) of the Texas Rules of Evidence. *See, e.g.*, *Price v. State*, 502 S.W.3d 278, 285–86 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (trial court did not abuse its discretion by admitting officer's testimony concerning declarant's positive identification of the appellant); *see also Smith v. State*, 830 S.W.2d 328, 330 (Tex. App.—Houston [14th Dist.] 1992, no pet.) (detective's testimony regarding declarant's pretrial identification of defendant in photo array and lineup was not hearsay). Under Rule 801(e)(1)(C), an out-of-court statement is not hearsay if the declarant testified at trial, was subject to cross examination about the declarant's prior statement, and the statement "identifies a person as someone the declarant perceived earlier." TEX. R. EVID. 801(e)(1)(C).

Here, Warren, the declarant, testified at trial, was subject to cross-examination and to recall by the defense, and her statement identified Geter as someone she perceived earlier. The defense did not cross-examine Warren about the photo lineup and her identification of Geter, nor did the defense recall Warren during Geter's case in chief to testify about the identification. She was, nonetheless, available and subject to such questioning. Under this record, we conclude the trial court did not

–9–

abuse its discretion by overruling Geter's objection to Detective Morgan's testimony.

In addition, any error in admitting the testimony was harmless because the State's evidence overwhelmingly established Geter's guilt. An appellate court must disregard a non-constitutional error that does not affect a criminal defendant's "substantial rights." TEX. R. APP. P. 44.2(b). Under that rule, an appellate court may not reverse for non-constitutional error if the court, after examining the record as a whole, has fair assurance the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004) (first citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); and then citing *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997))). After examining the entire record, we have fair assurance the error, if any, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *See Garcia*, 126 S.W.3d at 927. We base this conclusion on the considerable amount of evidence presented during trial identifying Geter as the shooter.

The three eyewitnesses to the shooting, Allen, Warren, and Shaw, testified at trial. Each provided different descriptions of the events leading to the shooting and the events that followed. For example, Allen told the jury Warren and Shaw were smoking PCP in the vehicle before Kemp took the keys and ran, whereas Warren and Shaw denied smoking PCP in the vehicle. Similarly, Allen testified Warren told

–10–

Geter to get her keys from Kemp, but neither Warren nor Shaw corroborated Allen's statement. Those inconsistencies, however, went to the witnesses' credibility and were resolved by the jury. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012) (jury is the sole judge of the credibility of witnesses and the weight afforded their testimony); *Bradley v. State*, 359 S.W.3d 912, 917 (Tex. App.– Houston [14th Dist.] 2012, pet. ref'd) (jury alone decides whether to believe eyewitness testimony, and it resolves any conflicts in the evidence).

Their testimony concerning how the shooting occurred and who shot Kemp, however, was consistent. Allen, Warren, and Shaw each testified Kemp grabbed the keys from the ignition, exited the vehicle, and ran away with the keys. They also agreed Geter chased after Kemp and then they heard at least two gunshots. Allen and Warren saw Geter shoot Kemp and saw Kemp fall to the ground. Shaw heard the shots, saw a muzzle flash, and testified Geter was shooting a gun while running toward Kemp. Allen and Warren also heard a second shot, and Allen testified she saw Geter shoot toward the ground after Kemp fell.

Allen's description of what happened after the shooting further supports the judgment. Allen told the jury she and Geter fled in Geter's car. She also stated Geter admitted to her that he shot Kemp. Allen also heard Geter ask Germany to get rid of the weapon and saw Geter give the gun to Germany for disposal. Geter's cell phone records corroborated Allen's testimony that she and Allen left the scene of the

shooting and drove to an apartment in Cedar Hill. The cell phone data also showed Geter's cell phone was at or near Corrigan Court at the time of the shooting.

Despite the consistent testimony of these witnesses identifying him as the shooter, Geter maintains he was "impermissibly harmed" by Detective Morgan's testimony because Warren "was unable to identify Appellant, in court, as the person she observed commit the underlying offense." We disagree. When the State asked Warren if she saw the shooter in the courtroom, her response was non-committal, stating: "Uh, oh, maybe. Uh, oh, my goodness. Uh, - - uh - - uh - - uh, may- - I think so." At the conclusion of Warren's testimony, Geter's counsel asked the trial court to "let the record reflect that, uh, Ms. Warren has not identified my client in open court." The trial court sustained the request.

Warren's failure to identify Geter in open court, however, merely goes to the weight and credibility of her testimony. *See, e.g., Gallien v. State*, Nos. 01-09-00968-CR, 01-09-00969-CR, 2011 WL 1530859, at *3 (Tex. App.—Houston [1st Dist.] Feb. 24, 2011, no pet.) (mem. op., not designated for publication) ( "the law does not require an in-court identification" and a witness's failure to identify a defendant in court "is merely one factor to consider in assessing the weight and credibility of a witness's testimony"); *Meeks v. State*, 897 S.W.2d 950, 955 (Tex. App.—Fort Worth 1995, no pet.) ("The fact that the complainant failed to identify Meeks at trial goes only to the weight and credibility of the witnesses and was before the jury for their consideration."); *see also Anderson v. State*, 813 S.W.2d 177, 179

–12–

(Tex. App.—Dallas 1991, no pet.) (if other evidence corroborates a witness's equivocal identification, "[t]he witness's uncertainty goes to the weight of the testimony and is for the jury").

After examining the entire record, we have fair assurance the complained-of testimony did not have a substantial and injurious effect or influence in determining the jury's verdict. TEX. R. APP. P. 44.2(b); *See Garcia*, 126 S.W.3d at 927; *see also Borque v. State*, 156 S.W.3d 675, 676–77 (Tex. App.—Dallas 2005, pet. ref'd) (concluding any error in admission of counselor's hearsay testimony of abuse harmless based on child's explicit and detailed testimony of abuse); *Jones v. State*, No. 05-22-00872-CR, 2024 WL 1757249, at *7 (Tex. App.—Dallas Apr. 24, 2024, no pet. h.) (mem. op.) (any error in admission of detective's recitation of victim's statement was harmless). We conclude any purported error was not harmful and overrule Geter's sole issue.

## CONCLUSION

Under this record, we conclude the trial court did not abuse its discretion by admitting Detective Morgan's testimony and any alleged error was harmless.

Accordingly, we overrule Geter's sole appellate issue and affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
230026F.U05

–14–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DONNY RAY GETER, Appellant

No. 05-23-00026-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas Trial Court Cause No. F21-75021-S. Opinion delivered by Justice Partida-Kipness. Justices Pedersen, III and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 11th day of July 2024.