Reynaldo Dwayne DRAPER, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–10–00180–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 25, 2011.

Rehearing Overruled Feb. 17, 2011.

Discretionary Review Refused
June 22, 2011.

Cary Marshall Faden, Sugar Land, for Appellant.

Gail Kikawa McConnell, Houston, for the State.

Panel consists of Justices SEYMORE, BOYCE, and CHRISTOPHER.

## OPINION

WILLIAM J. BOYCE, Justice.

Appellant Reynaldo Dwayne Draper was indicted for murder. *See* Tex. Penal Code Ann. § 19.02(b) (Vernon 2003). A jury found him guilty as alleged in the indictment, sentenced him to imprisonment for 75 years, and assessed a $10,000 fine. *See id.* §§ 12.32; 12.42(c)(1) (Vernon 2003). We affirm.

## BACKGROUND

Appellant invited several friends to a birthday party in his honor at a local bar. After the bar closed and the party ended, appellant and his friends stayed behind to talk in the parking lot. The complainant, who was not a part of appellant's group, stood nearby. The complainant made a comment about appellant's friend, who was dancing on a parked car. After a brief conversation between appellant and the complainant, the complainant turned to get into his car. Witnesses testified that ap-

pellant pulled out a firearm, shot at the complainant from behind, and fired several more shots at the complainant after he fell to the ground. Appellant fled, and the complainant died at the scene. An autopsy revealed that the complainant sustained nine entrance and two exit gunshot wounds.

The jury found appellant guilty of murder as alleged in the indictment. *See* Tex. Penal Code Ann. § 19.02(b). Appellant pleaded true to the enhancement paragraph, and the jury sentenced appellant to imprisonment for 75 years and assessed a $10,000 fine. *See* Tex. Penal Code Ann. §§ 12.32, 12.42(c)(1). Appellant argues on appeal that (1) the evidence is legally and factually insufficient to support his conviction; and (2) the trial court erred in denying a motion for mistrial appellant filed during the punishment phase of the trial.

## ANALYSIS

### I. Sufficiency of the Evidence

In his first two issues, appellant argues that the evidence is insufficient to support his conviction because (1) the State's witness Kimberly "Precious" Alexander contradicted herself at trial and admitted to being on ecstasy when giving her initial statement to police; and (2) the State's witness Leonard Poke was an "unreliable" witness. Appellant additionally claims that the record contains no evidence of his intent to commit murder in the absence of this allegedly inconsistent and unreliable testimony.

We address appellant's sufficiency challenges under a single standard for evaluating legal sufficiency of the evidence to support a finding required to be proven beyond a reasonable doubt. *See Brooks v. State,* 323 S.W.3d 893, 902 (Tex.Crim.App. 2010) (plurality opinion) (appropriate standard of review for sufficiency of the evi-

dence considers all evidence "in the light most favorable to the verdict" to determine whether a jury was "rationally justified in finding guilt beyond a reasonable doubt"); *id.* at 914 (Cochran, J., concurring) (concluding that a separate factual sufficiency standard no longer applies in criminal cases); *Romero v. State,* 331 S.W.3d 82, 83 (Tex.App.-Houston [14th Dist.] 2010, no pet. h.).

The jury was instructed: "A person commits the offense of murder if, he intentionally or knowingly causes the death of an individual or a person commits the offense of murder if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." *See* Tex. Penal Code Ann. § 19.02(b)(1), (2). The jury found appellant guilty of murder. *See id.*

Alexander testified that she saw a friend hand appellant something "shiny" right before the shots rang out, and that appellant later admitted to her that he shot the complainant. Poke testified that he saw appellant point a "shiny" firearm at the victim from behind, fire the gun, and shoot the complainant at least four or five more times while he was on the ground. Detective Mike Miller and Officer Jose Pena of the Houston Police Department both testified that physical evidence at the crime scene was consistent with Alexander's and Poke's version of events. Bar owner Roland "Free" Tasso testified that when he rushed to the parking lot after he heard gunshots, he bumped into appellant quickly walking away from the area where the complainant was shot. The medical examiner testified that the complainant suffered from nine gunshot entrance wounds, three of which would have been fatal; she also testified that one of the wounds was a contact wound received from a gun fired less than half an inch away.

Jarvis Atkins testified that he saw appellant moments after he heard the gunshots, and that appellant did not have a gun. He testified that appellant was wearing tight-fitting clothes the night of the shooting, making it impossible to hide a gun on his person.

Appellant asserts that Alexander's trial testimony was inconsistent. The complainant was shot and killed in front of the building, away from the side of the building where Alexander testified she was standing when she heard the gunshots. Alexander testified that she originally told police that appellant was in front of the building when she heard the gunshots; however, she made statements to a private investigator and testified at trial that appellant was standing next to her at that time. She also testified that she was on ecstasy when she first told the police that appellant was the shooter. She admitted that she told defense counsel before trial that she lied to police. She testified that what she told police was the truth, then testified that it was not the truth. She testified that the police instructed her on what to say in her first statement, and told her that she would be put in jail and her children would be removed by CPS because she "knew what happened." To explain her inconsistencies, she testified that she had been threatened by friends of appellant, and she was afraid if she were to "say something then me and my kids are going to be gone" and that "somebody will do something to us."

Appellant claims that Poke was an "unreliable" witness because his initial statements to police and to a private investigator indicated that appellant first shot the complainant in the back of the head. The evidence at trial showed that the complainant suffered no gunshot wounds to the head. Poke testified at trial that he could not remember if he initially told police and

a private investigator that appellant first shot the complainant in the back of the head. He testified that "it looked like the back of the head, you know what I'm saying?"

 Any alleged inconsistencies in the witnesses' testimony concern the credibility and weight to be given certain testimony. *See Lancon v. State,* 253 S.W.3d 699, 705–07 (Tex.Crim.App.2008). The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given testimony. *Herrero v. State,* 124 S.W.3d 827, 833 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (citing Tex.Code Crim. Proc. Ann. art. 38.04 (Vernon 1979), and *Garcia v. State,* 919 S.W.2d 370, 382 n. 6 (Tex.Crim.App.1996) (per curiam)). We resolve inconsistencies in testimony in favor of the jury's verdict. *Id.* (citing *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim. App.1988)). On this record, the jury was rationally justified in concluding that appellant was guilty of murder beyond a reasonable doubt. *See Brooks,* 323 S.W.3d at 902.

Moreover, appellant's contention that the record does not contain evidence of intent beyond the allegedly inconsistent testimony is without merit. A person acts intentionally "when it is his conscious objective or desire to ... cause the result"; a person acts knowingly "when he is aware that his conduct is reasonably certain to cause the result" Tex. Pen.Code Ann. § 6.03(a), (b) (Vernon 2003). Additionally:

> [I]t has long been held the intent of a defendant may be ascertained or inferred from the means used and the wounds inflicted. Intent to commit murder may be shown by the use of a deadly weapon per se. In fact, where a deadly weapon is fired at close range and death results, the law presumes an intent to kill.

*Womble v. State,* 618 S.W.2d 59, 64 (Tex. Crim.App.1981) (citations omitted). Testimony at trial showed that appellant used a deadly weapon—a firearm—at close range to shoot and kill the victim. See Tex. Pen.Code Ann. § 1.07(17)(A) (Vernon 2003). The jury was entitled to infer appellant's intent from this evidence. *Womble,* 618 S.W.2d at 64.

We overrule appellant's first two issues.

## II. Motion for Mistrial

Appellant argues in his third issue that the trial court erred in not granting his motion for mistrial during the punishment phase because (1) the jury indicated that it was hopelessly deadlocked; and (2) the *Allen* charge directing the jury to continue deliberating was coercive. *See Allen v. United States,* 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896). We disagree.

The trial court received three notes from the jury during its deliberations on punishment:

> **Jury Note 1 at 11:10 a.m.:** We need a clarification on the terms 99 years or life. Are these equal or different? If so, what are the differences?
>
> **Response at 11:14 a.m.:** I cannot answer this question. Please refer to the charge and continue your deliberations.
>
> **Jury Note 2 at 2:46 p.m.:** We need to know what will result if we cannot reach an agreement.
>
> **Response at 3:02 p.m.:** I cannot answer this question. Please refer to the charge and continue your deliberations.
>
> **Jury Note 3 at 6:35 p.m.:** We are 11–1 after 7 hours. We have one juror that will not move or listen to the other jurors because he/she doesn't feel that the evidence presented by the prosecution (amount of time taken/quality of the case presented) is enough to change his decision. This juror has made it clear

that the defendant is guilty. On multiple occasions yet he/she has stated he/she wants to "make a point" to the prosecution. Additional comments made regarding his decision "This is not about Renaldo [sic] Draper."

Appellant moved for a mistrial, arguing that the note indicated that the jury was hopelessly deadlocked. *See* Tex.Code Crim. Proc. Ann. art. 36.31 (Vernon 2006). The trial court denied appellant's motion and proposed that the jury be given an *Allen* charge. Appellant objected to the trial court's proposed *Allen* charge, claiming it was coercive because it implied that the entire case, rather than just the punishment phase, would have to be retried if the jury did not reach a unanimous decision on punishment. The trial court overruled appellant's objection and gave the *Allen* charge to the jury.

### A. Deadlock

After a case is submitted to the jury, the court may, in its discretion, discharge the jury and declare a mistrial where it has deliberated so long that it becomes altogether improbable that it will agree. *See id.* However, there is no limit on the length of time a jury may deliberate. *Melancon v. State*, 66 S.W.3d 375, 383 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd) (op. on reh'g) (en banc) (citing *Guidry v. State*, 9 S.W.3d 133, 155 (Tex. Crim.App.1999)). Reversal is mandated only if the record reveals that the trial court abused its discretion by holding the jury for deliberations. *Id.* (citing *Jackson v. State*, 17 S.W.3d 664, 676 (Tex.Crim. App.2000)).

According to the trial court's docket sheet, the guilt-innocence phase of the trial lasted approximately 1012 hours, and the punishment phase lasted an additional four to five hours. The jury heard from 17 witnesses and was given 43 exhibits to review. The jury had been deliberating more than seven hours when it sent its third note to the trial court. Following the trial court's *Allen* charge, no other notes were sent to the trial court by the jury until it rendered its unanimous verdict.

We conclude on this record that the trial court did not abuse its discretion in denying appellant's motion for mistrial and giving an *Allen* charge to encourage further deliberation after seven hours of deliberation on punishment. *See, e.g., Page v. State*, 819 S.W.2d 883, 885–86 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd) (no abuse of discretion in denying motion for mistrial when jury reported deadlock after three hours of deliberation following 30–minute punishment trial); *Goods v. State*, No. 14–97–01285–CR, 1999 WL 548265, at *34 (Tex.App.-Houston [14th Dist.] July 29, 1999, pet. ref'd) (not designated for publication) (no abuse of discretion in denying motion for mistrial when jury reported deadlock after five hours of deliberation following two-hour trial); *see also Melancon*, 66 S.W.3d at 383–84 (no abuse of discretion in ordering jury to continue deliberating when it reported deadlock after four and a half hours in aggravated robbery trial); *Matthews v. State*, 691 S.W.2d 2, 5 (Tex.App.-Beaumont 1984), *aff'd*, 708 S.W.2d 835 (Tex.Crim.App.1986) (no abuse of discretion in denying motion for mistrial when jury reported deadlock after ten hours of deliberation following trial with 17 witnesses, 49 exhibits, and multiple issues for the jury to resolve); *Moses v. State*, No. 14–99–00377–CR, 2004 WL 78162, at *1 (Tex.App.-Houston [14th Dist.] Jan. 20, 2004, no pet.) (mem. op., not designated for publication) (no abuse of discretion in denying motion for mistrial when jury reported deadlock after eight hours of deliberation following 4.5–hour trial). Accordingly, the trial court acted within its discretion in denying appellant's

motion for mistrial based on the jury's reported deadlock.

### B. *Allen* Charge

■ Appellant complains that the *Allen* charge was coercive because it suggested that the entire case, rather than just the punishment phase, would have to be retried if the jury did not reach a unanimous decision on punishment. *See* Tex.Code Crim. Pro. Ann. art. 37.07 § 3(c) (Vernon 2006).

■ An *Allen* charge is designed to foster debate and circumvent a mistrial after a jury has indicated that it is deadlocked. *Allen*, 164 U.S. at 501–02, 17 S.Ct. 154. The trial court gave the following instruction in response to the jury's third note:

> If this jury finds itself unable to arrive at a unanimous verdict, it will be necessary for the Court to declare a mistrial and discharge the jury.
>
> This indictment will still be pending, and it is reasonable to assume that the case will be tried again before another jury at some future time. Any such future jury will be empanelled in the same way this jury has been empanelled and will likely hear the same evidence which has been presented to this jury. The questions to be determined by that jury will be the same questions confronting you and there is no reason to hope the next jury will find these questions any easier to decide than you have found them.
>
> With this additional instruction, you are instructed to continue deliberations in an effort to arrive at a verdict that is acceptable to all members of the jury if you can do so without doing violence to your conscience.

This court and the Court of Criminal Appeals have approved *Allen* charges containing almost identical language. *See, e.g., Arrevalo v. State*, 489 S.W.2d 569,

570–72 (Tex.Crim.App.1973); *Willis v. State*, 761 S.W.2d 434, 437–38 (Tex.App.Houston [14th Dist.] 1998, pet. ref'd).

Additionally, the trial court's charge is not misleading as to whether the entire case, rather than just the issue of punishment, would have to be retried in the event of a mistrial. The charge states: "The questions to be determined by that jury will be the same questions confronting you...." The only question confronting the jury at that time was appellant's punishment; the jury had already decided his guilt. The initial charge given to the jury expressly states: "By your verdict in this case you have found the defendant guilty of the offense of Murder.... It is necessary now that the jury assess and fix the punishment for this offense." There is nothing in the record to suggest that the jury disregarded or was confused by these instructions. *See Resendiz v. State*, 112 S.W.3d 541, 546 (Tex.Crim.App.2003) (we presume jury followed trial court's instructions absent evidence to the contrary); *Williams v. State*, 937 S.W.2d 479, 490 (Tex.Crim.App.1996) ("[W]e assume that the jury would follow the instructions as given, and we will not reverse in the absence of evidence that the jury was actually confused by the charge.").

This court and the Austin Court of Appeals have approved similar *Allen* charges for use in the punishment phase of a trial. *See Deaton v. State*, No. 03–08–00455–CR, 2009 WL 1811068, at *8–11 (Tex.App.-Austin June 26, 2009, pet. ref'd) (mem. op., not designated for publication); *Hairston v. State*, No. 14–04–01016–CR, 2006 WL 1026880, at *2–3 (Tex.App.-Houston [14th Dist.] Apr. 20, 2006, pet. ref'd) (mem. op., not designated for publication). Both decisions relied on the Court of Criminal Appeals's rationale in *Howard v. State*, 941 S.W.2d 102 (Tex.Crim.App.1996). The *Al-*

*len* charge at issue in *Howard* was given during the punishment phase of a capital murder case; the charge failed to inform the jurors that if they failed to reach an agreement on punishment, the trial court was statutorily bound to impose a life sentence. *See Howard*, 941 S.W.2d at 123–24; *see also* Tex.Crim. Pro.Code Ann. art. 37.071 § 2(g) (Vernon 2006). The Court of Criminal Appeals disagreed with the defendant's argument that such a charge was coercive because the jury might erroneously conclude that failure to agree would result in an entirely new trial. *Id.*

In applying the rationale of *Howard* to analyze the same *Allen* charge problem raised here, *Deaton* held:

> Although *Howard* was a capital case, we believe the reasoning in *Howard* is also applicable to non-capital cases such as this one. Whether the result of jury deadlock is the automatic imposition of a life sentence or a new trial on punishment, the failure of a jury to reach an agreement on a verdict is not a favored outcome.... Including language in the charge to the effect that a mistrial would be "as to punishment only," particularly after deliberations have become difficult, could " 'effectively negate the 'coercive' nature of an *Allen* charge and encourage jurors to discontinue deliberation, contradicting the thrust of the supplemental charge."

*Deaton*, 2009 WL 1811068, at *10–11 (quoting *Howard*, 941 S.W.2d at 125). We agree with this reasoning and similarly hold that the trial court did not err in giving the same *Allen* charge in appellant's case.

The trial court acted within its discretion in overruling appellant's complaint about the *Allen* charge and denying appellant's motion for mistrial. We overrule appellant's third issue.

## CONCLUSION

Because we overrule all of appellant's issues on appeal, we affirm the judgment of the trial court.