

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00869-CR

Michael Rudi **SEEGER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2013CR2146
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed:  December 31, 2014

AFFIRMED

Michael Rudi Seeger was convicted of aggravated assault on a public servant and was sentenced to seven years of confinement. On appeal, Seeger argues (1) the evidence is legally insufficient to support his conviction, and (2) the trial court erred in denying his motions for mistrial. We affirm.

### SUFFICIENCY OF THE EVIDENCE

Seeger argues there is legally insufficient evidence to support his conviction for aggravated assault on a public servant because the evidence did not show he knew the complainant was a

public servant. In a federal due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 1763 (2012). The court of criminal appeals has explained that this standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence." *Adames*, 353 S.W.3d at 860. Therefore, on appellate review, we determine whether based on "cumulative force of all the evidence" the necessary inferences made by the trier of fact are reasonable. *Id.* We conduct this constitutional review by measuring the evidentiary sufficiency with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.*

A person commits assault if he intentionally or knowingly threatens another with imminent bodily injury. *See* TEX. PENAL CODE ANN. § 22.01(a)(2) (West Supp. 2014). A person commits aggravated assault if he commits assault and uses or exhibits a deadly weapon during the commission of the assault. *See id.* § 22.02(a)(2) (West 2011). Aggravated assault is a felony of the first degree if it is committed "against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant." *Id.* § 22.02(b)(2)(B).

The evidence shows that on December 14, 2012, Deputy Santos Chavarria of the Bexar County Sheriff's Office was searching for Seeger so that he could serve a felony warrant on Seeger. Based on a tip, Deputy Chavarria went to a large junkyard that contained cars and abandoned buildings. Two other deputies, Carlos Riojas and Robert Wann, met Deputy Chavarria at the junkyard to assist in the execution of the warrant. As the deputies were searching the junkyard, they saw a man walk "out from behind some junk vehicles." Deputy Wann testified that because

this man matched the description of Seeger, Deputy Wann pulled his weapon, announced "Sheriff's Office," and told the man to "get on the ground" in a "loud voice." The man complied and identified himself as someone other than Seeger. Deputy Wann then handcuffed the man for safety reasons. Deputy Wann testified that he told the man that they were looking for Seeger and ordered the man in a loud voice to tell them where Seeger was. Deputy Chavarria likewise testified that Deputy Wann was shouting at the man, demanding to know where Seeger was. With a hand gesture and his eyes, the man indicated a trailer, about six or seven feet away. Deputy Wann testified that he and the other two deputies then announced themselves and told Seeger to come out of the trailer. Deputy Chavarria testified as he approached the door of the trailer, Deputies Wann and Riojas made the announcements. Deputy Riojas confirmed that they "were announcing 'Sheriff's Department.'" According to Deputy Riojas, he then specifically used Seeger's name: "Michael Seeger, we know you're in there. Come on out." Deputy Chavarria testified that the trailer door was "fastened with a swivel lock." He "banged on the door, undid the swivel lock, announced 'Sheriff,' and pulled the door open." As soon as he swung open the door, he "was looking down the barrel of a rifle." According to Deputy Chavarria, he saw Seeger seated "with the barrel of the rifle pointed right at me." Deputy Chavarria testified that he "panicked":

> I saw the barrel and experienced what they call tunnel vision. I pushed myself immediately away from the doorway and moved out of the line of fire closer to that window and drew my weapon. . . . I shouted, "Gun."

Deputy Wann testified that after Deputy Chavarria opened the door, he heard Deputy Chavarria yell "Gun." Deputy Wann then saw Deputy Chavarria push himself away from the trailer and run for cover. The deputies yelled at Seeger to "drop the gun." When the deputies moved back toward the trailer, Seeger was still holding the rifle, but it was pointed down. Deputy Chavarria yelled at Seeger, "Drop the weapon or we will kill you." Seeger complied.

Seeger argues the evidence is legally insufficient to support his conviction because the "evidence was insufficient to show that [he] had either of the required culpable mental states." He claims he pointed "the rifle at the door of the trailer because of the ruckus happening outside, followed by the pounding on the door by Deputy Chavarria." According to Seeger, "[i]mmediately upon realizing that the noise and pounding were caused by deputies, [he] desisted, put down his weapon, and apologized." Seeger emphasizes that the events occurred quickly and that he "did not know that these were public servants lawfully engaged in an official duty until Deputy Chavarria opened the door, whereupon [he] did the correct thing by putting his weapon down." Seeger points to testimony that Deputy Wann used "rough and colorful street language" when he demanded to know the whereabouts of Seeger. According to Seeger, "[s]omeone inside the trailer hearing this, perhaps being awakened by it, could reasonably think that he ought to protect himself, especially considering the rough neighborhood and surroundings." However, there was also testimony that the windows of the trailer were broken and that the officers announced themselves loudly before Deputy Chavarria opened the door of the trailer. The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and of the strength of the evidence. *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). When faced with conflicting evidence, we presume the trier of fact resolved any such conflict in favor of the prosecution. *Id.* Based on the evidence presented at trial, a reasonable juror could find beyond a reasonable doubt that Seeger knew he would be pointing his rifle at a public servant lawfully discharging an official duty. We therefore hold the evidence is legally sufficient.

## MOTION FOR MISTRIAL

In his second issue, Seeger argues "[t]he trial court erred when it implicitly denied [his] two motions for mistrial, because the jury deliberated long enough that it was reasonable to expect that the jury could not reach a verdict." After a case is submitted to the jury, the trial court may, in its discretion, discharge the jury and declare a mistrial where the jury has deliberated so long that it becomes altogether improbable that it will agree. *Draper v. State*, 335 S.W.3d 412, 416 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *see* TEX. CODE CRIM. PROC. ANN. art. 36.31 (West 2006) ("After the cause is submitted to the jury, it may be discharged when it cannot agree and both parties consent to its discharge; or the court may in its discretion discharge it where it has been kept together for such time as to render it altogether improbable that it can agree."). There is no limit, however, on the length of time a jury may deliberate. *Draper*, 335 S.W.3d at 416. And, a trial court has the discretion to determine the length of time a jury may be held for deliberations. *Katzenberger v. State*, 439 S.W.3d 566, 570 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). On appeal, we review a trial court's ruling on a motion for mistrial for an abuse of discretion and will uphold the ruling if it is within the zone of reasonable disagreement. *Id.* We assess the trial court's exercise of discretion by considering the amount of time the jury deliberated in light of the nature of the case and the evidence. *Id.* Additional factors to consider are how long the jury was deadlocked and whether the margin of disagreement had changed during the course of deliberations. *Id.*

The trial court estimated that the "actual testimony" presented during the guilt/innocence phase lasted about three and a half hours. The record reflects that (1) all four witnesses testified on October 30, 2013; (2) there was a "lunch recess"; (3) proceedings resumed in the afternoon; and (4) after the last witness testified, there was an "evening recess." On October 31, 2013, the jury charge was read to the jury, and both sides presented closing argument. The jury then began its

deliberations at about 11:15 a.m. The jury then stop deliberating for about an hour and fifteen minutes for lunch. After lunch, the jury continued deliberating until 5:30 p.m.

The next morning on November 1, 2014, the jury began deliberating at 9:00 a.m. It again stopped for an hour and fifteen minutes for a lunch break. After lunch, the jury deliberated until the jury's foreperson sent the trial court a note stating that the jury members were unable to reach a unanimous verdict. After confirming that neither side had an objection, the trial court gave the jury an *Allen* charge at about 2:25 p.m. The jury later sent out a note requesting evidence to review. After bringing the jury back into the courtroom at about 5:20 p.m., the trial court gave the jury a supplemental charge, to which Seeger had no objection. The jury then went back to its deliberations.

Seeger moved for mistrial, arguing that it was reasonable to expect the jury was not going to reach a verdict. The trial court had the jury brought back into the courtroom and stated, "Without telling me how many for guilty, how many for not guilty, can you tell me what the split is, please, in the vote." The foreperson replied "between 10 and 2, 11 to 1." The trial court then asked, "[I]f I let you continue deliberating, do you think you'll be able to reach a verdict if you continue on for a bit longer?" The foreperson replied, "I would say that's in doubt, unfortunately. . . . How long would you say 'a bit' is?" The trial court answered, "About 6:30 or so." The foreperson replied, "I can't speak for everyone. I, personally, would appreciate the extra hour. I have a business trip. I'm scheduled to leave on Sunday." The trial court agreed to let the jury continue deliberating.

About an hour later, Seeger again moved for a mistrial. The prosecutor replied, "And I would guess that right now – they asked till 6:30 and they're filling out the verdict, so wait ten minutes to bring them in. The ten minutes, we have ten more minutes to let them fill it out, and – whichever way, and then I probably can see where you want to bring them in, but we would object to a mistrial, of course." The trial court replied, "Well, I'm going to give them ten minutes to finish

filling out that verdict form." Ten minutes later, the jury entered the courtroom with a unanimous verdict of guilty. Seeger asked the jury members to be polled individually, and each member confirmed his or her verdict.

A "trial court is not bound to declare a mistrial at the first sign of juror impasse." *Katzenberger*, 439 S.W.3d at 570 (citation omitted). Seeger argues the trial court abused its discretion because "[t]his was not a complex case" and "[t]he entire testimony lasted no more than three and a half hours." However, the jury did have to consider the four witnesses' accounts of the events from their different vantage points and perspectives. Further, after receiving the *Allen* charge, the jury requested evidence to review, which indicated the jurors were continuing to deliberate the merits of the case. *See Katzenberger*, 439 S.W.3d at 571. When Seeger then moved for a mistrial, the foreperson requested the additional hour to deliberate, which the trial court reasonably granted. In reviewing this record, we find no abuse of discretion by the trial court.

We therefore affirm the judgment of the trial court.

Karen Angelini, Justice

Do not publish