**Affirmed and Majority and Concurring Memorandum Opinions filed April 16, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00726-CR

---

**ROBERT ANTONIO HOUSTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1522384**

## MAJORITY MEMORANDUM OPINION

Appellant Robert Antonio Houston was convicted of robbery by a jury, and pleaded true to two prior convictions for possession of a controlled substance. The trial court assessed his punishment to 37 years' confinement. In his sole issue on

appeal, appellant contends the evidence is legally and factually insufficient to support his conviction. We affirm.

## I.     Background

The complainant, and her husband, own and manage an Exxon Food Mart and gas station located in Harris County, Texas. The store provides check cashing services. On August 12, 2016, the complainant stopped at Panera Bread to pick up lunch, then withdrew $30,000 from her bank for check cashing services at the store, and close to noon, arrived at the Exxon Food Mart. The complainant parked her silver Mercedes SL 500 near one of the gas pumps and stayed in the car because she was on a telephone call with her husband.

In the meantime, occupants of a maroon sport utility vehicle ("SUV") had been waiting in the convenience store parking lot for five or ten minutes. After the complainant parked her car at the gas pump, the SUV driver circled around the gas pumps and the complainant's vehicle twice. When the complainant exited her car with the money bag, the SUV stopped in front of her car, within a few feet of her. Appellant exited the SUV from the passenger side wearing a black mask that covered his forehead and eyes. Appellant grabbed the money bag containing $30,000, punched the complainant in the face at least three times, causing her to fall to the ground, and as he was about to leave, appellant turned back to take the complainant's black purse containing $250 and her Panera Bread bag of food. During the struggle, appellant's mask came off and the complainant saw his face. Appellant got back in the SUV on the passenger side and the SUV drove away. The foregoing events were captured on the store's video surveillance system.

When the SUV left the convenience store parking lot, the SUV pulled in front of another driver. The driver, Randall Bell, sensed something was wrong

2

because he noticed the complainant getting up from the ground. Bell followed the SUV until it stopped, about two miles away, in front of a trailer park, where its two occupants exited the SUV and entered a second car. Bell provided this information to police officers, who located the SUV.

Harris County Sheriff's Deputy, Bradley Bruns, processed the SUV and found a latent fingerprint on the interior of the driver's door window. On the passenger side of the SUV, Deputy Bruns also noted a Panera Bread bag, deposit receipts, lady's glasses, and lip balm. Deputy Diane Median, a latent print examiner with the Harris County Sheriff's Department, testified the print taken from the SUV matched appellant's fingerprint.

Harris County Sheriff's Deputy, Robert Rincon, a robbery investigator, spoke with the deputy initially at the crime scene, interviewed the complainant, viewed the store surveillance video, and followed up with the deputy that processed the SUV. The print processed from the SUV generated appellant as a suspect. Deputy Rincon subsequently created a six-man photospread and showed it to the complainant. She identified appellant's photograph as her robber, but said she was not 100 percent certain. The complainant testified she was more than 90 percent certain because she had seen him without the mask. Although the complainant was shown several photo arrays, the complainant did not identify anyone else as the person who robbed her—she only identified appellant.

At trial, the complainant identified appellant in court as the man who punched and robbed her. The complainant explained that appellant was wearing a mask over his face when he initially exited the SUV, but the mask did not cover his entire face. According to the complainant, "You could see the eyes, a little bit of cheeks and the mouth and the chin." The complainant saw appellant's uncovered

3

face because the mask slipped off when he was punching her. She looked at appellant's uncovered face and clearly saw what he looked like—she was very close to appellant. Despite appellant striking her, the complainant did not close her eyes and her vision was good.

Appellant's former girlfriend, Tiffany Bladen, testified that the maroon SUV did not belong to appellant; however, he borrowed it on occasion.[1] Bladen testified that on August 12, 2016, she and appellant were "around each other."

Appellant's long-time girlfriend, DeAngelis Ward, testified that in the early morning of August 12, 2016, she was feeling sick at work and appellant picked her up. She estimated that appellant picked her up around 2:30-3:30 a.m. She testified that he was with her at their apartment at the time of the robbery.

Lastly, appellant testified; he admitted to having an extensive criminal history. Appellant testified he borrowed the SUV in question and was driving it on the morning of the robbery, but claimed he returned the vehicle to its owner, around 4:00-5:00 a.m., before the robbery occurred. He claimed to have spent the entire day with his longtime girlfriend, Ward, who confirmed his story.

Appellant was charged by indictment with the offense of robbery, enhanced by two prior felony convictions. In August 2018, Appellant was convicted by a jury of robbery. On August 14, 2018, after finding that appellant was guilty of the charged offense and the enhancement paragraphs true, the trial court assessed punishment to 37 years' confinement. This appeal timely followed.

---

[1] At the time of the incident, Bladen was not appellant's girlfriend. After he was charged with this robbery, Bladen rekindled a relationship with appellant while he was in jail. At the time of trial, Bladen testified she planned to marry him.

## II.    Analysis

In his sole issue, appellant challenges the legal and factual sufficiency of the evidence to establish his identity as the person who robbed the complainant. Because the Court of Criminal Appeals abolished factual-sufficiency review "in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt," we review the evidence only for legal sufficiency. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). Anticipating that we will perform an analysis for just the legal sufficiency of the evidence, appellant contends that the failure to perform a factual sufficiency review violates notions of due process, due course of law, and equal protection.

To the extent appellant complains that the failure to perform a factual sufficiency review violates notions of due process, due course of law, and equal protection, we are tasked with following the Court of Criminal Appeals opinion in *Brooks v. State*, which abolished factual-sufficiency review. *See* 323 S.W.3d at 895. Moreover, we reject appellant's contention that the failure of our court to perform a factual sufficiency review violates due process, due course of law, and equal protection. *See Mayer v. State*, 494 S.W.3d 844, 848 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Mason v. State*, 416 S.W.3d 720, 728 n.10 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *accord Bealefield v. State*, No. 14-15-00805-CR, 2018 WL 3734102, at *1 (Tex. App.—Houston [14th Dist.] Aug. 7, 2018, no pet.) (mem. op., not designated for publication); *Shafer v. State*, No. 14-15-00372–CR, 2017 WL 716402, at *4 (Tex. App.—Houston [14th Dist.] Feb. 23, 2017, no pet.) (mem. op., not designated for publication). Therefore, we only apply one standard when reviewing a challenge to the sufficiency of the evidence,

and that standard is the standard for legal sufficiency. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

In determining whether the evidence is legally sufficient to support the conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *see also Braughton v. State*, 569 S.W.3d 592, 607–08 (Tex. Crim. App. 2018). We presume that the jury resolved conflicting inferences in favor of the verdict, and we defer to its determination of the evidence's weight and credibility. *See id.* at 608; *Temple*, 390 S.W.3d at 360; *Criff v. State*, 438 S.W.3d 134, 136–37 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

The scope of our review is all of the evidence, whether it was properly or improperly admitted at trial. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *See Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Hooper*, 214 S.W.3d at 13.

A person commits robbery if, in the course of committing theft, he intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code § 29.02(a). A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of property.

*Id*. § 31.03. To obtain a conviction, the State must prove that the defendant is the person who committed the charged offense. *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984); *Smith v. State*, 56 S.W.3d 739, 744 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

An eyewitnesses' identification is direct evidence of a defendant's guilt. *Ex parte Saenz*, 491 S.W.3d 819, 830 (Tex. Crim. App. 2016); *see Aguilar v. State,* 468 S.W.2d 75, 77 (Tex. Crim. App. 1971) (upholding conviction for assault with intent to murder when only one witness saw defendant with gun). Moreover, a crime victim's testimony identifying a defendant as the perpetrator, standing alone, is sufficient to support a conviction. *Bradley v. State*, 359 S.W.3d 912, 917 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *Harmon v. State*, 167 S.W.3d 610, 614 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (legally sufficient evidence to sustain aggravated robbery when complainant identified defendant as the person who beat and robbed her); *Johnson v. State*, 176 S.W.3d 74, 77 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (holding evidence legally sufficient to sustain aggravated robbery conviction when complainant testified appellant robbed her at knife-point, complainant identified appellant in photographic lineup, and complainant identified appellant in court).

Here, the evidence is sufficient to establish appellant's identity because the complainant identified him as the robber. The complainant identified appellant in the photographic array as the person who pointed a gun at her. The complainant twice identified the defendant in court as the robber. This was direct evidence of identity and is sufficient to establish appellant's guilt. *See Bradley*, 359 S.W.3d at 917; *Harmon*, 167 S.W.3d at 614; *Johnson*, 176 S.W.3d at 77.

Appellant argues that the complainant's testimony fails to support his conviction because the complainant was not 100 percent certain of her pretrial identification of appellant during the photospread. It is undisputed that the complainant testified she was only 90 percent sure of her pretrial identification. The jury can assess credibility in considering the complainant's testimony that she was not completely sure when she positively identified appellant in the photospread. *See Harmon v. State*, No. 14-12-00713-CR, 2014 WL 1852172, at *6 (Tex. App.—Houston [14th Dist.] May 6, 2014, no pet.) (mem. op., not designated for publication).

Appellant also challenges the sufficiency of the complainant's in-court identification of appellant, claiming the State did not show that such identification was not influenced by the pretrial identification procedure in which the complainant viewed the photospread. At trial, however, appellant did not challenge the pretrial identification procedure as suggestive, impermissible, or otherwise improper, and he neither argues on appeal nor is there evidence in the record indicating suggestiveness. Texas courts strictly apply the contemporaneous objection rule in the context of suggestive identification procedures. *See* Tex. R. App. P. 33.1(a); *Perry v. State*, 703 S.W.2d 668, 670 (Tex. Crim. App. 1986). Absent a timely objection to the in-court identification, or testimony based on an allegedly suggestive identification procedure, no error is preserved. *Id.* at 671. Failure to complain about or object to the in-court identification constitutes procedural default and waiver of any complaint on appeal. *Wallace v. State*, 75 S.W.3d 576, 584 (Tex. App.—Texarkana 2002), *aff'd on other grounds*, 106 S.W.3d 103 (Tex. Crim. App. 2003). But even assuming appellant's complaint is preserved, his contention would be without merit because the photo array was not impermissibly suggestive, as demonstrated by the testimony of complainant and

the officer who showed her the photo array. *See generally Barley v. State*, 906 S.W.2d 27, 33–34 (Tex. Crim. App. 1995).

Moreover, the complainant's in-court identification was based on her observation of appellant during the offense, which was not influenced by the pretrial identification procedure. The complainant testified she had good vision, that she looked at appellant's face when the masked slipped off, that she saw what he looked like, and that she was very close to appellant and facing him. *See Bradley*, 359 S.W.3d at 918. "As the sole factfinder, the jury determines how much weight and credibility to afford the witnesses' testimony and we defer to those resolutions." *Rodriguez v. State*, No. 14-16-00294-CR, 2017 WL 3045777, at *3 (Tex. App.—Houston [14th Dist.] July 18, 2017, no pet.) (mem. op., not designated for publication); *Crooks v. State*, No. 01-12-00996-CR, 2014 WL 4344842, at *2–3 (Tex. App.—Houston [1st Dist.] Aug. 29, 2014, pet. ref'd) (mem. op., not designated for publication) (rejecting defendant's argument that evidence was insufficient because the "only evidence linking him to the robbery . . . was unreliable due to the impermissibly suggestive identification procedures," since jury heard testimony regarding the identification procedures and it was jury's role to resolve witnesses' testimony).

The complainant's identification of appellant was corroborated, moreover, by circumstantial evidence of identity. Appellant's fingerprint was found on the interior side of the driver's door window of the SUV used during the robbery. This evidence supports a finding that appellant was the person who committed the robbery. *See Threadgill v. State*, 146 S.W.3d 654, 663 (Tex. Crim. App. 2004) (presence of defendant's fingerprints on car involved in offense was probative to sufficiency analysis).

Appellant testified that he did not own the SUV, but had borrowed the vehicle from its owner and drove it on the day of the robbery; however, appellant claimed he returned it to the owner, around 4:00-5:00 a.m., before the robbery's commission. Appellant asserts the evidence showed that the robber exited and re-entered the SUV from the passenger side. Appellant argues that because his fingerprint was lifted from inside the driver's side window, it could not have been left at the time of the robbery. Appellant further maintains that the bystander, Bell, who followed the SUV in his own car, testified that when the SUV finally pulled over in front of a trailer park, another vehicle pulled up to the passenger side, and a couple of people got out of the SUV. From this testimony, appellant argues, "[Bell] did not see anyone get out of the driver's side, so no fingerprint could have been left then." Bell, however, did not testify to that effect. He made no mention in his direct testimony or on cross-examination from which side of the SUV the two people exited. As such, Bell's testimony fails to support appellant's contention that his "single fingerprint could not have been made at the time of the offense." Nevertheless, a rational jury could have found appellant guilty of robbery without any fingerprint evidence. *See Santos v. State*, 116 S.W.3d 447, 459 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (rejecting argument that lack of fingerprints connecting defendant to robbery rendered evidence insufficient to support conviction).

Finally, appellant asserts the evidence is insufficient to support his conviction because appellant's former girlfriend, Ward, testified that the SUV did not belong to appellant but he had given her a ride home from work in it on the day of the robbery because she was sick, and appellant stayed home with her throughout the day. On cross-examination, Ward testified that appellant could not have been with Bladen on August 12, 2016, because appellant was with her

10

instead. The jury has the right to accept or reject any of the witnesses' testimony, including appellant's alibi witness. *Washington v. State*, No. 14-02-01095-CR, 2003 WL 21710488, at *3 (Tex. App.—Houston [14th Dist.] July 24, 2003, pet. ref'd) (mem op., not designated for publication) (holding jury's right to disregard defendant's alibi); *Moore v. State*, 804 S.W.2d 165, 166 (Tex. App.—Houston [14th Dist.] 1991, no pet.) (holding jury is entitled to accept the State's version of the facts and reject appellant's version or reject any of the witnesses' testimony).

These points merely invoke questions about the credibility of the evidence, which was within the purview of the jury. *See Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008); *Bradley*, 359 S.W.3d at 917 ("The jury alone decides whether to believe eyewitness testimony, and the jury alone resolves any conflicts or inconsistencies in the evidence."). Any inconsistencies in the testimony should be resolved in favor of the jury's verdict in a legal-sufficiency review. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988) (en banc); *Draper v. State*, 335 S.W.3d 412, 415 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

Viewing the evidence as a whole in the light most favorable to the verdict, we conclude that a rational juror could have found every essential element of the offense beyond a reasonable doubt.

### III. Conclusion

The judgment of the trial court is affirmed.

/s/ Margaret "Meg" Poissant
Justice

Panel consists of Justices Christopher, Spain, and Poissant. (Spain, J., concurring). Do Not Publish – Tex. R. App. P. 47.2(b)

11