

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00036-CR

———————————————————

STEPHEN JOSEPH PARSONS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 97th District Court
Archer County, Texas
Trial Court No. 2022-0029A-CR

---

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

A jury found Appellant Stephen Joseph Parsons guilty of the murder of Gary Kuykendall and assessed his punishment at 85 years' confinement in the Texas Department of Criminal Justice and a $10,000 fine. *See* Tex. Penal Code Ann. § 19.02(b)(1). The trial court sentenced Parsons in accordance with the jury's verdict, and Parsons appealed.

In one issue, Parsons contends that the trial court abused its discretion by denying his request for an instruction on the lesser-included offense of manslaughter. Because the evidence does not show that Parsons shot Kuykendall recklessly to the exclusion of shooting him knowingly or intentionally, we hold that the trial court did not abuse its discretion by refusing Parsons's requested lesser-included-offense instruction. Thus, we overrule Parsons's issue and affirm the trial court's judgment.

## I. Background

The events started with a dispute between Parsons and Susie Gillispie, his mother, about whether Parsons should drive while he was intoxicated. As Parsons was leaving her home, the two argued, and Gillispie tried to prevent him from driving in his inebriated condition. But Parsons resisted, reversed his vehicle out of the driveway, and sped away. In the process of doing so, Parsons dragged Gillispie down the driveway, injuring her extensively, and leaving her motionless on the ground.

Seeing Gillispie lying motionless in the driveway, Melissa Stevens—Gillispie's across-the-street neighbor—went to Gillispie's aid. Meanwhile, after running a stop

2

sign and going "airborne" in the process, Parsons returned to Gillispie's house, and a new argument ensued.

By this time, Parsons's driving and the commotion in Gillispie's driveway had attracted the attention of two other neighbors, Allen Betts and Kuykendall. While Betts watched from his yard, Kuykendall went to Gillispie's home to see if he could help. When Kuykendall approached Parsons and asked him to calm down and to talk, Parsons responded by drawing a pistol and pointing it at Kuykendall's head.

After Parsons drew the pistol, Stevens retreated to her house across the street, but before she made it to her house, she saw Parsons shoot Kuykendall in the forehead. Stevens called the police.

According to Gillispie, when the shooting occurred, she was not yet back on her feet after being dragged and was still lying in the driveway. She heard Parsons say, "No, leave me alone. Don't touch me," to which Kuykendall responded, "[Parsons,] I'm not going to touch you. We just need to talk." Parsons retorted, "I told you not to touch me," and then Gillispie heard "a pop."

Following the "pop," Gillispie saw Parsons place the pistol under his chin and heard him say, "I shot him." Fearing that Parsons was going to shoot himself, Gillispie took the pistol away from him and handed it to Betts.

Betts too saw Parsons shoot Kuykendall,[1] so he ran to Gillispie's property. According to Betts, Parsons was distraught and ran around proclaiming, "[O]h my god! Oh my god! What have I done?"

Amid this confusion, Gillispie's boyfriend, Dakota Shilke, arrived and started yelling, "[O]h my god! What's going on?" Parsons responded by "getting in [Shilke's] face" and saying, "I did it, . . . . Kill me. I shot him." According to Betts, Parsons "just kept rambling and rambling and rambling that same thing," and he could see that Parsons's behavior was upsetting Shilke.

Concerned that Parsons might have another weapon and that Parsons's behavior might spark some new unwanted development, Betts took Parsons to the ground and kept him there until the police arrived.

The police arrested Parsons. After the arresting officer asked Parsons for his name, Parsons volunteered, "I f[***]ing shot him."

After Kuykendall was declared dead at the scene, his body was transported to the Dallas County Medical Examiner's Office for an autopsy. The medical examiner confirmed that the cause of Kuykendall's death was a gunshot wound to the head and later testified that she found stippling—gunpowder particles—across Kuykendall's

---

[1]Betts described Parsons as shooting without hesitation.

forehead, eye areas, and the bridge of his nose, indicating that the gun was fired one to three feet from Kuykendall's face.[2]

## II. The Differences Between Murder and Manslaughter

For our purposes, three differences distinguish murder from manslaughter:

- Murder requires that the defendant knowingly or intentionally cause the death of another person, whereas manslaughter requires that the defendant recklessly cause the death of another person.  Tex. Penal Code Ann. §§ 19.02(b)(1), 19.04(a).

- Murder is a first-degree felony.[3]  Manslaughter is a second-degree felony. *Id.* §§ 19.02(c), 19.04(b).

- A first-degree felony is punishable by imprisonment for life or for any term of not more than 99 years or less than 5 years.  *Id.* § 12.32.  In contrast, a second-degree felony is punishable by imprisonment for any term of not more than 20 years or less than 2 years.  *Id.* § 12.33.

Parsons contends that the jury should have been allowed to consider whether he was guilty only of manslaughter, the punishment for which is capped at 20 years' imprisonment.

## III. Legal Principles, Standard of Review, and Analysis

When analyzing whether a defendant was entitled to a lesser-included-offense instruction, we must ask two questions.  First, does the offense qualify as a lesser-included offense, i.e., are the elements of the lesser-included offense included within

---

[2]Betts, however, estimated that Kuykendall and Parsons were about "a good car length and a half" apart when Parsons fired the pistol.

[3]An exception whereby murder is a second-degree felony exists, but the exception is not relevant here.  *See id.* § 19.02(d).

the proof necessary to establish the charged offense's elements? And second, is there evidence in the record from which a jury could find the defendant guilty of only the lesser-included offense? *State v. Meru*, 414 S.W.3d 159, 161 (Tex. Crim. App. 2013); *Hall v. State*, 225 S.W.3d 524, 528, 535–36 (Tex. Crim. App. 2007). But we reach the second question only if the requested lesser offense qualifies under the first step as a lesser-included offense. *Meru*, 414 S.W.3d at 162–64. Here, because the State correctly concedes that manslaughter qualifies as a lesser-included offense, we focus only on the second question.[4] *See Stredic v. State*, 663 S.W.3d 646, 652 (Tex. Crim. App. 2022) (listing manslaughter as a lesser-included offense of murder).

In considering this second question—whether there is evidence from which a jury could find Parsons guilty only of manslaughter—we make a factual determination based on all the evidence presented at trial. *Meru*, 414 S.W.3d at 163; *see Ritcherson v. State*, 568 S.W.3d 667, 677 (Tex. Crim. App. 2018) (admonishing that the court cannot make a lesser-included determination from isolated evidence in a vacuum). We must consider whether the record contains "(1) evidence that directly refutes or negates other evidence establishing the greater offense and raises the lesser-included offense or (2) evidence that is susceptible to different interpretations, one of which refutes or negates an element of the greater offense and raises the lesser offense." *Ritcherson*, 568

---

[4]Courts are not bound by any agreement or concessions by the parties on an issue of law. *Oliva v. State*, 548 S.W.3d 518, 520 (Tex. Crim. App. 2018).

S.W.3d at 671; *see Chavez v. State*, 666 S.W.3d 772, 778 (Tex. Crim. App. 2023) (setting out how trial courts determine whether to submit a lesser-included instruction).

Appellate courts review a trial court's refusal to submit a lesser-included-offense instruction for an abuse of discretion. *Chavez*, 666 S.W.3d at 776. A trial court abuses its discretion when its decision is arbitrary—i.e., without reference to any guiding rules and principles—or is so clearly wrong that it lies outside the zone of reasonable disagreement. *Velasquez v. State*, No. 05-16-00333-CR, 2018 WL 416494, at *6 (Tex. App.—Dallas Jan. 16, 2018, no pet.) (mem. op., not designated for publication). Here, the trial court could have reasonably concluded that no evidence supported the inference that if Parsons was guilty of an offense, he was guilty only of manslaughter, i.e., recklessly causing Kuykendall's death by shooting him.

The evidence showed that Parsons pointed the gun at Kuykendall's head at close range and fired it.[5] The use of a deadly weapon in a deadly manner allows an inference by the fact finder of an intent to kill, and that inference is "almost conclusive." *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993) (quoting *Godsey v. State*, 719 S.W.2d 578, 581 (Tex. Crim. App. 1986)); *Fields v. State*, 515 S.W.3d 47, 53 (Tex. App.—San Antonio 2016, no pet.). And when the deadly weapon is fired at close range and death results, that inference rises to the level of a legal presumption of an intent to kill. *Womble v. State*, 618 S.W.2d 59, 64 (Tex. Crim. App. [Panel Op.]

---

[5]A firearm and toolmark examiner testified that he performed a trigger-pull test on the pistol and determined that the trigger weight was not light.

1981); *Draper v. State*, 335 S.W.3d 412, 415 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). Thus, regardless of whether pointing a gun at someone's forehead at close range and firing it can be described as reckless, such conduct almost conclusively points to killing someone knowingly or intentionally.

Yet Parsons argues that everything about his conduct that day was reckless. He drank to excess. While intoxicated, he drove a vehicle and brandished a firearm. According to Parsons, shooting Kuykendall was part and parcel of his overall reckless conduct. But to warrant a lesser-included manslaughter instruction, there must be evidence directly germane to the lesser-included offense and that evidence must rise to a level that a rational jury could find that if the defendant is guilty, he is guilty *only* of the lesser-included offense. *See Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012) ("Pulling out a gun, pointing it at someone, pulling the trigger twice, fleeing the scene (and the country), and later telling a friend 'I didn't mean to shoot anyone' does not rationally support an inference that [the] [a]ppellant acted recklessly at the moment he fired the shots."); *Coleman v. State*, No. 02-23-00104-CR, 2024 WL 3364820, at *12 (Tex. App.—Fort Worth July 11, 2024, pet. ref'd) (mem. op., not designated for publication). Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and negates or refutes an element of the greater offense. *Cavazos*, 382 S.W.3d at 385; *Coleman*, 2024 WL 3364820, at *12. Here, nothing in the evidence negates the inference that Parsons shot Kuykendall knowingly and intentionally. Thus, the trial

8

court did not abuse its discretion by refusing to submit a lesser-included manslaughter instruction. *See Ritcherson*, 568 S.W.3d at 671.

We overrule Parsons's sole issue.

## V.  Conclusion

Having overruled Parsons's sole issue, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 16, 2025